Statement of Facts.

FIDELITY ETC. CO. v. WILLIAM LOUGHLIN ET AL.

PENNA. CO. FOR INS. v. WILLIAM LOUGHLIN ET AL.

GIRARD ETC. CO. v. WILLIAM LOUGHLIN ET AL.

GUARANTEE ETC. CO. v. WILLIAM LOUGHLIN ET AL.

PHILAD. ETC. CO. v. WILLIAM LOUGHLIN ET AL.

APPEALS BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 13, 1891—Decided February 2, 1891.

1. Section 21, act of June 1, 1889, P. L. 420, provides for a state tax of one half mill upon the capital stock of "every corporation. . . . . whatsoever," for each one per cent of dividend declared, if such dividend amount to six per cent or more; if no dividend, or less than six per cent, be declared, the tax is then to be three mills upon each dollar of the value of the stock, as ascertained by the method directed in § 20.

2. The object aimed at is a uniform tax on the actual value. The different methods of estimating such value, in regard to property which though of the same kind is thus differently situated, are within the province of the legislature to determine; and the uniformity of the tax, as laid by §§ 1 and 21, of the act, and its consequent validity, are settled by Fox's App., 112 Pa. 337.

3. But, clearly to prevent double taxation on mortgages, etc., which are taxed eo nomine in § 1 of said act and as part of the capital stock in § 21, the proviso to the latter section is added, that corporations, etc., "liable to tax on capital stock under this section," shall not be taxable on mortgages, etc., constituting assets "included within the appraised value of their capital stock."

4. Wherefore, the intent of the act was to tax all mortgages three mills on the dollar, but not to tax any of them twice. Upon mortgages included in the capital stock of corporations, three mills are levied, indirectly under § 21, on their value as part of the stock as estimated by the profits earned; but upon mortgages not so included, directly under § 1, as upon mortgages in the hands of individuals.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 171–175 January Term 1891, Sup. Ct.; court below, Nos. 355, 619, 825, 556, 316, C. P. No. 2, in Equity.

To the numbers and terms stated, in the court below, the

Fidelity Insurance, Trust & Safe Deposit Co., the Pennsylvania Co. for Insurance on Lives and Granting Annuities, the Girard Life Insurance, Annuity & Trust Co., the Guarantee Trust & Safe Deposit Co., and the Philadelphia Trust, Safe Deposit & Insurance Co., filed separate bills in equity against William Loughlin, George W. Fairman and Simon Gratz, constituting the board of revision of taxes for the city of Philadelphia, and J. Wesley Durham and Albert A. Dunton, assessors of the Sixth ward of said city.

The bill filed by the Fidelity company averred that the plaintiff was a corporation created by the act of March 22, 1866, P. L. 278, with an authorized and paid-up capital of $2,000,000 divided into twenty thousand shares of $100 each; that in pursuance of its charter powers it had received large sums of money on deposit at interest, which were invested in stocks, bonds, loans, mortgages and authorized securities, and that its capital stock and surplus fund were also, to a considerable extent, invested in the same kinds of securities; that for a number of years past it had declared and paid dividends at a higher rate than six per cent; that in accordance with the provisions of § 3, act of June 30, 1885, P. L. 193, it had elected to make payment of a state tax of six tenths of one per cent of the par value of its capital stock, as therein provided, and on March 4, 1889, had duly made the payment of said tax accordingly. for said year 1889, being $12,000, in advance, to the proper officers of the commonwealth; that subsequently, the act of June 1, 1889, P. L. 428, was passed, and in future years it would be taxable under §§ 20 and 21 of said act; that, as said act of 1889 could not affect its position as to taxation for the year 1889, as was averred, it had not made or been called upon to make to the auditor general the return or report referred to in § 20 of said act, but expected in due course to make such return or report in November, 1890; that, notwithstanding the foregoing facts, defendants Durham and Dunton, the assessors of the Sixth ward, had prepared and presented a certain blank form of affidavit, requiring its treasurer to state the aggregate of the mortgages, judgments and other securities owned by it, and to be sworn that the same constituted a portion of its assets included within the appraised value of its capital stock, and had declared that, unless its treas-

urer made such affidavit, they would assess from outside or other information the mortgages, judgments, and other securities held by it, and return the same to the board of revision. Averring, further, how the plaintiff had been advised upon the subject, the bill prayed for,

" 1. An injunction, . . . . restraining the said J. Wesley Durham and Alfred N. Dunton from assessing or returning any sum or amount as liable to taxation in our hands, because of our ownership of mortgages, judgments, bonds, stocks or other property claimed to be taxable under the act of 1889, or any valuation of our assets, or conjecture thereof for the purpose of such assessment or return.

" 2. An injunction, . . . . restraining the said William Loughlin, George W. Fairman, and Simon Gratz, constituting the board of revision of taxes of the city of Philadelphia, and each and every of them, from adding fifty per cent to the amount of any return heretofore made, or which may hereafter be made by the said assessors, of the valuation of said assets to us belonging.

" 3. An injunction against the said Loughlin, Fairman, and Gratz, constituting said board, . . . . restraining them from making any return to the board of revenue commissioners of the state of Pennsylvania, of any assets to us belonging, or any valuation thereof.

" 4. An injunction against said Loughlin, Fairman, and Gratz, constituting said board, . . . . restraining them from levying any tax upon us by virtue of our ownership of any of said assets mentioned in said bill.

" 5. A decree that, by our election to pay and our payment of said six-mills tax, we are exempted from further or other taxation, under the law of this commonwealth, for 1889, and that we are not called upon or required to make or cause to be made any such affidavit as demanded.

" 6. General relief."

The bills filed by the other plaintiffs contained averments of fact substantially the same as the foregoing, save that sworn affidavits or returns such as were required by the assessors had been made, which however, as was averred, the plaintiffs were not obliged by law to make. The prayers for relief, were also substantially the same.

The defendants demurred to the several bills, and for causes thereof showed:

" 1. That the six-mills tax which complainant alleges it elected to pay and has paid, was for the year 1890, and the tax on personal property assessed by the said assessors is for the year 1890.

" 2. That the said company did not appraise or have appraised its capital stock, under the twentieth section of the said act of June 1, 1889, and is not therefore within the fourth proviso to the twenty-first section of said act.

" 3. That the complainant is taxable under the first section of said act.

" 4. That the complainant had an adequate remedy, which, if lost, has been lost by its own laches. •

" 5. That the said bill doth not contain any matter of equity wherein the court can ground any decree or give to the plaintiff any relief against these defendants or any of them."

After argument, the court, without opinion filed, overruled the demurrer, whereupon the defendants answered each bill, admitting most of the allegations thereof, but averring that the payments made in March, 1889, were for the tax year 1889, whereas the tax sought to be assessed and collected was for the year 1890; that, as matter of law, the mortgages and loans (amounting in the case of the Fidelity company to $11,538,386.97) were directly taxable in the hands of the plaintiffs, while the bonds held by them (amounting in the case of the Fidelity company to $3,562,042.28) were taxable, either directly in the hands of the complainant, or, through the agency of the companies issuing the bonds.

The causes having been set down for hearing on bills and answers, after argument thereof, the court, without opinion filed, entered a decree, in each case, awarding a perpetual injunction in substance as prayed for, preceded by the following judgment:

That no tax upon the following classes of personal property belonging to the plaintiff, to wit: mortgages, money owing by solvent debtors, articles of agreement and accounts bearing interest, shares of stock in any bank, banking, or savings institution or company, public loans or stocks, moneys loaned or invested on interest in any other state, and other money capi-

Opinion of the Court.

tal, is due and payable by it under existing laws, and that all attempts and pretences to assess and levy the same are hereby· declared void and of no effect.

—Thereupon, the defendants took these appeals, in each case specifying that the court below erred :

1. In adjudging that no tax is due and payable under existing laws by the company complainant, upon its mortgages, money owing by solvent debtors, articles of agreement and accounts bearing interest, shares of stock, public loans or stocks, moneys loaned or invested on interest in other states, and other moneyed capital.

2. In not adjudging that the company complainant was taxable under § 1 of the act of June 1, 1889, entitled . . . . . upon all the personal property of the classes therein enumerated held by it in its own right.

3. In granting a perpetual injunction restraining the defendants from assessing upon and collecting from complainants tax under § 1 of the act of June 1, 1889.

4. In not dismissing complainant's bill.

*Mr. Rufus E. Shapley* and *Mr. Wm. S. Kirkpatrick*, Attorney General, for the appellants.

*Mr. Richard C. Dale* (with him *Mr. Samuel Dickson*), for the Fidelity Co. ; *Mr. John G. Johnson*, for the Pennsylvania Co.; *Mr. Geo. Tucker Bispham*, for the Girard etc. Co.; *Mr. Charles E. Pancoast* and *Mr. W. Rotch Wister* for the Guarantee Co. ; and *Mr. R. L. Ashhurst* and *Mr. Rowland Evans*, for the Philadelphia Co., appellees.

OPINION, MR. JUSTICE MITCHELL :

The question raised in these cases is the extent of the taxation imposed by the act of June 1, 1889, P. L. 420, upon mortgages, etc., owned by corporations. The subject being one of public importance and urgency, the counsel for the commonwealth filed demurrers to the complainants' bills, and all parties have united in waiving subordinate and collateral matters, and asking us to determine the cases upon the main question.

The first section of the act fixes the subjects of taxation, to wit, all mortgages, moneys due, accounts bearing interest,

public and corporate loans and stocks, etc., owned, held, or possessed by any person, copartnership, joint-stock company, limited partnership, bank, or corporation whatsoever, liable to taxation within this commonwealth. This section follows substantially the language of § 17 of the act of June 7, 1879, P. L. 112, re-enacted as § 1 of the act of June 30, 1885, P. L. 193, but with some important additions, among which is the one with which we are now concerned, that of "any joint-stock company or association, limited partnership, bank, or corporation whatsoever," in the enumeration of taxable owners. The previous acts of 1879 and 1885 had not contained these words, and, as they had adhered to the phraseology of prior statutes, with long-settled judicial construction, they were necessarily held not to include mortgages, etc., belonging to corporations: Fox's App., 112 Pa. 337; Loughlin's App., 19 W. N. 517; Trust Co. v. Loughlin, 17 Phila. 123. The act of 1885 was a supplement (as the intermediate act of June 10, 1881, P. L. 99, had been) to the act of 1879; and the latter was a new and elaborate statute " to provide revenue by taxation," and was intended to supply to a large extent previous acts, and be the starting point of a new system. But, as corporations were not included among taxable owners under the section quoted, and as there were not only corporations, limited partnerships, etc., which had no capital stock, but also others which might have mortgages, etc., not properly part of their capital stock, but investments of surplus or reserve funds, etc., it became apparent that there were some corporations, and some assets of others, which would not be reached by the capital-stock tax under other sections to be noticed hereafter, and which would therefore escape taxation under the acts altogether. It was partly, if not principally, to remedy this omission, that the act of 1889 seems to have been passed. Sections 2 to 18, inclusive, relate chiefly to the machinery of collection, and have no special relevancy to corporations, though they expressly include corporations in their terms and provisions throughout, and no question of the liability of mortgages held by corporations, to taxation under § 1, could be raised on these parts of the act. The sections immediately following relate expressly and exclusively to corporations. Sections 19 and 20 provide for the registration of corporations, limited partnerships, etc., in the auditor gen-

eral's office, before going into operation, and for specific and detailed returns of amount of capital, number of shares, value, dividends, earnings, price, etc., to be made annually to the auditor general. These sections are substantially re-enactments and expansions of §§ 1 and 2 of the act of 1879, and are clearly preparatory to the next section, which imposes a tax upon the capital stock of corporations. This section, § 21 is a re-enactment of § 4 of the act of 1879. It provides for a tax of a half mill upon the capital stock for each one per cent of dividend declared annually, if such dividends amount to six per cent or more ; and if no dividend or less than six per cent be declared, then the tax is to be three mills upon each dollar of the value of the capital stock, as ascertained by the method directed in the preceding section.

The uniformity of the tax thus laid by §§ 1 and 21, and its consequent validity, have been settled in Fox's Appeal, supra. It is a tax of three mills on the actual value of the property. In the case of a mortgage held by an individual, the act assumes that it is not part of his business, but of his accumulated, income-producing estate ; that its income is certain, and it is therefore worth its nominal amount ; and hence the tax is fixed at three mills. In the case, however, of corporations, limited partnerships, etc., the mortgages are only part of capital stock engaged in business, which may be of variable profit and therefore produce an uncertain income. The act assumes that if it produces six or more per cent dividends, the capital is worth par or over, and therefore measures its actual value by its rate of declared or earned profits ; while, if it produces less than six per cent, a careful system of valuation or appraisement is provided in § 20. The object aimed at is a uniform tax on the actual value, and the different methods of estimating such value, in regard to property which, though of the same kind, is thus differently situated, are, unless manifestly a mere cover for want of uniformity, within the province of the legislature to determine.

The legislature having thus adopted for re-enactment the scheme of the act of 1879 for determining the value of corporation assets, but having written into the list of taxable owners, in the first section, corporations, which had been excluded from the corresponding section of that act, it became apparent that

Opinion of the Court.

the two sections would produce double taxation on the mort·
gages, etc., which were taxed eo nomine in § 1, and as part of
the capital stock in § 21. To prevent this, they added the
proviso to § 21, that corporations, limited partnerships, etc.,
"liable to tax on capital stock under this section, shall not be
required to pay any further tax on the mortgages, bonds, and
other securities belonging to them, and constituting any portion
of their assets included within the appraised value of their
capital stock." It is this proviso, especially the phrase, apprais-
ed value, which makes the principal difficulty in the present
question.

Three constructions are suggested: First, by appellants, that
the tax plainly imposed by § 1 is not interfered with, but is to
be imposed under all circumstances, and then the mortgages,
etc., so taxed shall not be subject to any "further" or addi-
tional tax under § 21; or, in other words, that corporations
with capital stock shall not be subject to the tax imposed by
§ 21 on that portion of their capital stock invested in mort-
gages, etc., already taxed under § 1. The objection to this
construction is that it requires the violent distortion of the ar-
rangement and meaning of the language of the proviso. What is
actually said is that "corporations liable to tax on capital stock
under this section shall not be required to pay any *further*,"
i. e., *other*, tax, etc. To transpose, as appellant asks us to do,
the words "under this section," so as to read, "shall not be
required to pay any further tax under this section," is not only
to make a change without warrant, but one subversive of the
plain meaning of the language used. The tax under this sec-
tion is plainly to be first laid, and the exemption is from any
further, i. e., other tax under other sections.

A second construction, also urged by appellants, is that "ap-
praised value" means taxable value as ascertained by the
dividends paid, taking six per cent to indicate par, and each
additional per cent a proportionate increase, so that twelve per
cent would indicate twice par. To illustrate: If a corporation
having a nominal capital stock of two millions pays dividends
of twelve per cent, the appraised or taxable value must be as-
sumed to be four millions, and then if the actual assets are
five millions the extra million must pay the three-mill tax
under § 1. Upon this view an elaborate scheme is developed

which does so far carry out the purpose of the act that it imposes a uniform three-mill tax upon all the mortgages, etc., of corporations, without apparently doubling taxation, except in cases where the percentage of dividends does not indicate correctly the actual value of the capital stock. But just here is the insuperable objection to it, that it arbitrarily assumes that twelve per cent, for example, represents twice par, and upon this assumption it builds up a highly complicated and artificial scheme which is without substantial foundation in the act. The section aims at actual value, and it establishes the dividends as the measure of such value, upon the basis that in ordinary times and on the average that will produce a fair result. In an exceptionally prosperous year, the dividends may indicate a value larger than the true one, while, in a less profitable year, only the same dividends may be declared upon a much larger actual value. The act charges a uniform rate in both years, upon the basis, as already said, that the average result will be approximately correct. The appellants' present contention would charge the full high rate in the first case, and the full rate with the additional three mills in the second. Whether or not this mode would in the end secure with more certainty to the commonwealth its three mills on all taxable property, we are not at liberty to adopt it, in the face of the objection that it is not the mode established by the act.

The third construction, presented by the appellees, is that the tax imposed by § 21 is not cumulative, but in substitution for that of § 1, and that only such of their mortgages, etc., are taxable under the latter as are not included in their capital stock taxed under the former. The principal objection to this construction is that it seems to some extent to run counter to the main purpose of the act as already indicated, to reach for taxation property of the enumerated kinds in the hands of corporations. But, while this general intent of the act is clear, the intent of the proviso is equally clear to prevent double taxation under §§ 1 and 21. All provisos conflict at least in form with the rest of the acts to which they belong. They are meant to exclude something which would otherwise be included, or vice versa. The exclusion may be in matter of substance, as, where the thing excluded belongs properly to the class described, but for other reasons is to be excluded; or, it may be in matter of

Opinion of the Court.

form only, as where the thing excluded does not really belong to the class, but is apparently within the words of the description. But, though conflicting in form, the act and its proviso need not be repugnant or inconsistent in substance, and notwithstanding some obscurity in the form of expression, we do not think there is any necessary inconsistency here. Double taxation is never to be implied unless the implication is unavoidable. Here double taxation is not only not unavoidably implied, but is clearly intended to be prevented. This is indicated to some extent by the exception in § 1 of "shares of stock in any corporation or limited partnership liable to the capital-stock tax imposed by the twenty-first section," etc., and it is the manifest purpose of the proviso to § 21 itself. The phrase used is, "constituting any portion of their assets included within the appraised value of their capital stock." It is apparent that something more is meant than the capital stock, strictly so called. As to corporations not paying dividends of six or more per cent a most careful mode of appraisement is provided for by § 20, and as to such corporations there is no difficulty. Their case is literally covered by the words of the proviso. Any mortgages, etc., which are not included in such appraisement, if such there should be, are clearly taxable under the first section, but no others. But as to corporations paying six or more per cent, there is also a sense in which the words, appraised value, may be applied.

The system of measuring value by dividends, as is done by § 21, is an arbitrary one, and, as already shown, may not in every year represent the actual value with entire accuracy. And this is likely to be especially the case as to mortgages, which are taxed as part of the dividend-paying capital at the rate of the aggregate profit. They may be the least profitable part of the capital. Indeed, it is common knowledge that at the date of the act, and now, no corporation can make six per cent profits on its mortgages alone. As to mortgages, therefore, the valuation by stock dividends is especially an arbitrary and artificial one. And, besides dividends declared, and therefore properly so called, the section directs that any profits made and added to a sinking fund shall, for the purposes of the act be treated as dividends, and shall subject the capital stock to taxation as such. While, therefore, the phrase, appraised value,

was no doubt suggested by the provisions of § 20, as to which it is the exactly appropriate term, yet it is fairly applicable also to the value of the capital stock of corporations paying six per cent dividends, as assumed or estimated by the mode prescribed in § 21. So read, the proviso applies to all mortgages of corporations, of either class, included in the valuation of the stock prescribed by either § 20 or § 21, and so read it carries out its plain intent of preventing double taxation. Under what circumstances there may be any mortgages not so included in the appraised value, we need not now inquire. If there should at any time be any such, they will be taxable under § 1, but the returns are that there were none such in the present cases, and the truth of the returns is admitted by the demurrer. It is to be recollected, also, that the section applies not only to corporations but to joint stock associations and limited partnerships, and that language had to be used which would include them all.

We conclude, therefore, on examination of both sections, that the intent of the act was to tax all mortgages three mills on the dollar, but not to tax any of them twice. As to individuals, the tax is levied by § 1 directly on the mortgages at their face value; but, as to such mortgages as are included in the capital stock of corporations, the three mills are levied, not directly on the mortgages themselves, but, under § 21, on their value as part of the stock as estimated by the profits earned; while mortgages belonging to corporations, but not included in such estimated or appraised value, if any such there should be, are taxable directly under § 1, like mortgages in the hands of individuals.

In one of the present cases, no return was made to the assessors, the corporation claiming that none was necessary, as it had paid more than six per cent in dividends, and was therefore taxable only on its dividends, under § 21. The failure to make return was not material in this instance, as the return asked was for the year 1889, and the corporation had, previously to the passage of the act of 1889, paid the six-mill tax imposed by § 3 of the act of 1885, and was therefore, under the terms of that act, exempt from any further tax for that year. But the reason assigned for the refusal to make the return is not tenable. The act of 1889, in § 2, requires a sworn

return from every taxable, individual or corporate.   It is therefore the duty of all corporations, no matter under which section they are taxable, to make the return to the assessors called for by § 2, in addition to the return made to the auditor general under § 20.   Such returns are for the information of the assessors, and are necessary to enable them to see that the proper tax is assessed, and to perform their own duties towards that result.   In the present cases, as already said, no question arises on the returns, as their correctness is admitted by the pleadings.

> The decrees in these cases are affirmed, and the appeals dismissed, with costs.