## CINCINNATI OIL WORKS CO v CINCINNATI (City)
## REFINERS OIL CORP v SAME

Ohio Appeals, 1st Dist, Hamilton Co

No 3733. Decided May 26, 1930

Wm. Jerome Kuertz, Cincinnati, for Oil

Works Co.

John D. Ellis and Milton H. Schmidt, both of Cincinnati, for City.

HAMILTON, J.

It is settled law in Ohio that municipalities may lay occupational taxes on businesses, trades, professions, and vocations, as long as the State, through its general assembly, does not lay an occupational tax on businesses, trades, professions, and vocations. State ex rel v Carrel, 99 Oh St, 220.

City of Cincinnati v A. T. & T. Co., et al, 112 Oh St, 493.

With the constitutionality of the occupational tax settled, we will discuss the propositions in the order as above enumerated.

It is argued by the plaintiffs in error that by the levying of the excise tax of three cents per gallon under §5527 and 5541-1, GC, the State has invaded the field of levying an excise tax upon the sale of gasoline, and thereafter the Cincinnati occupational tax may no longer be legally assessed.

The argument of counsel, orally and in the brief, is that the three cent excise tax is charged against the dealer on the sale of the product. This proposition is disposed of in the case of State ex rel v Brown, 112 Oh St, 590, wherein the court defined the character of the tax and construed §9 of the act, amending §6292 and §6295 GC.

The court in construing §9 said:

"The act does not lay a tax of two cents per gallon upon gasoline and other volatile and inflammable liquids derived from petroleum as such, but only upon gasoline and other volatile and inflammable liquids derived from petroleum when used, distributed, or sold in Ohio for motor vehicle fuel in motor vehicles, used, or to be used in whole or in part upon the highways and streets of the state. **The tax is upon the enjoyment of the privilege of using motor vehicle fuel in traveling upon the highways and streets of the state. * * *"**

This construction is amply sufficient to refute the argument that the tax is a sales tax upon the dealer for the business of selling.

However, in addition to this construction by the Supreme Court, we have §5534 of the new act, providing for a refunder of taxes to "Any person, firm, association, partnership, or corporation, who shall use any motor vehicle fuel, as defined in this Act, on which the tax herein imposed has been paid, for the purpose of operating or propelling stationary gas engines, tractors not used on the highways, motor boats or aircraft, or who shall use any fuel upon which the tax herein provided for has been paid, for cleaning or dyeing, or any other purpose than the propulsion of motor vehicles operated or intended to be operated in whole or in part upon the highways of this state, shall be reimbursed to the extent of the amount of the tax so paid on such motor vehicle fuel in the following manner; * * "

The act then provides that such person shall file his claim with the Tax Commis-

sion on due certification, and the Tax Commission shall then determine the amount of the refund due, and the same shall be paid to the claimant..

The construction of §9 by the Supreme Court in the Brown case, together with the provisions of §5534 as to refunders disposes of the argument that the gasoline tax is a tax upon the dealer or the sales of the commodity.

See also: **Firestone v Cambridge, 113 Oh St, 57.**

The second proposition presents the question as to whether or not the state of Ohio by its levy of an annual franchise tax upon domestic corporations under §5495 GC, et seq., has preempted the field of levying an ocucpational tax.

The plaintiffs in error argue that §5495 GC, providing for the annual fee, the annual report to the tax commission by the corporation, the signatures of the officers of the corporation on the annual report, the detailed annual report of the corporation as to its business, the determination of the value of the stock by the commission, based on the annual report, and its own investigation, and other matters contained in the code relative thereto show that the annual franchise tax on domestic corporations "for the privilege of exercising its franchise" during the calendar year is a tax on the business, and therefore the state has preempted the field.

The defendant in error argues that the annual franchise tax levied on domestic corporations is but the charging of a fee for the right of the corporation to exist and transact business as a corporation. In other words, it is a fee charged on the right to exist rather than an excise tax upon the business of the company.

The question as to whether or not the annual franchise tax is but a tax upon the right to exist as a corporation or upon the transaction of business by the corporation has been before the courts in several states, and many times before the federal courts, and the holdings have not been uniform. The question as to what this tax is has practically in all of the cases arisen when it is sought to make the franchise or license tax a lien on the assets of a corporation going through bankruptcy proceedings, or whose business is in the hands of a receiver. See: People of the State of New York v Jersawit, Trustee, etc., 263 U. S. Rep., 493. People of the State of New York, ex rel N. Y. C. & H. R. R. Co. v Gaus, Comptroller, 200 N. Y. Rep. 328. People of the State of New York, ex rel Mutual Trust Co. v Miller, Comptroller, 177

N. Y. Rep. 51. New Jersey v Anderson, 203 U. S. Rep. 483. Bright, et al v State of Arkansas, 249 Fed. Rep., 950. People of State of New York v Hopkins, et al, 18 Fed. Rep. (2nd Series) 731. Cayuga & S. R. Co. v Delaware, L. & W. R. Co., 213 N. Y. S., 586. **State of Ohio v Harris, etc., 229 Fed. Rep. 892.**

The weight of authority as shown in the cases above referred to would lead to the conclusion that the annual franchise fee or tax is for the paramount purpose of taxing corporations for exercising their rights under the franchise, which is transacting business. The decisions are that when a corporation is in bankruptcy, and not in the exercise of its franchise rights, it is not subject to a franchise fee or tax.

The Ohio statute was under consideration in the case of State of Ohio v Harris, supra, the second paragraph of the syllabus of which is:

"While the corporations here involved fall nominally within the class to which the franchise fee or tax (§5495, GC) applies, still, in view of the status of each, they are not corporations intended by the statute to be taxed, since the paramount purpose of the statute is to tax corporations which are in the exercise of their franchises."

Circuit Judge Warrington, in the opinion, states that this is seen in the provisions of the statute which require the secretary of state to keep a correct list of the corporations "engaged in business" within the state, and monthly to certify reports to the tax commission showing new corporations, changes in capital stock, dissolution of corporations, and giving such other information as the commission may require.

The statute also contains provisions which authorize a corporation, upon mere retirement from business, to secure exemption from the requirement of filing reports and paying the tax.

It will be noted that the corporation code provides for the incorporation of domestic corporations. Compliance with these statutes brings the corporation into existence, and from that time it has its existence, provided that existence is not forfeited by a failure to comply with the code provisions, which would work a forfeiture of the franchise.

Sec 5495-1 GC provides:

"For the purpose of this act domestic corporations shall be considered organized upon the filing of articles of incorporation in

the office of the secretary of state, * * * Each domestic corporation shall be required to file its first report and pay the tax thereon in and for the calendar year immediately succeeding the date of its organization, * * *"

Sec 5495-2 GC provides that an annual report in writing be filed with the tax commission, on such form as the commission may prescribe.

Sec 5496, GC, provides:

"The annual corporation report shall be signed and sworn to before an officer, authorized to administer oaths, by the president, vice-president, secretary, treasurer, general manager, superintendent, or managing agent in this state, of such corporation. If a domestic corporation has not completed its organization, its annual report shall be signed and sworn to by one of its incorporators."

Sec 5497, GC, provides for the contents of the annual report, which shall include the amount of the capital stock, surplus, whether earned or unearned, undivided profits and reserves. Also a schedule of the annual rates of depreciation and depletion. Also the location and value of the property owned and used by the corporation, both within and without the state, and the total amount of business done, and the amount of business done within the state by said corporation during its preceeding annual acounting period. Business done within the state by domestic corporations shall include all business except extra-state business. The report shall also include the value of the good-will of the corporation as shown on its books, if carried thereon as an asset.

Sec 5498 GC provides for determining the value of stock, and provides:

"After the filing of the annual corporation report the tax commission, if it shall find such report to be correct, shall on or before the first Monday in May determine the value of the issued and outstanding shares of stock of every corporation required to file such report. Such determination shall be made as of the date shown by the report to have been the beginning of the then current annual accounting period of such corporation. For the purpose of this act, the value of the issued and outstanding shares of stock of any such corporation shall be deemed to be the total value, as shown by the books of the company of its capital, surplus, whether earned or unearned, * * *"

The act further provides that the tax commission shall determine the amount of taxes due during the year for which such report is made. The act further provides that on the first Monday in June the tax commission shall certify to the auditor of state the amount determined by it.

Sec 5499 GC, then provides that the auditor shall charge for collection from each such corporation a fee of ⅛ of 1 per cent for each of the years, 1927 and 1928 and 1-10 of 1 per cent for each year thereafter upon such value so certified, and shall immediately certify the same to the treasurer of state. The act further provides that no fee shall be charged from any corportation which has been adjudged a bankrupt, or for which a receiver shall have been appointed.

There are following sections which have to do with the procedure for which a fee on annual franchises is collected, providing against 'false returns, failure to make reports, and many other provisions controlling this proposition, and §5506, GC, makes such taxes and penalties a just lien on the property.

It would seem far-fetched indeed to say that all these statutory provisions are not for the purpose of collecting an excise tax for the privileges of transacting the business authorized under its charter. In other words, in the language of §5495 GC, "for the privilege of exercising its franchise during the calendar year."

We know of no way in which a domestic corporation can exercise its franchise except that it do the things authorized in the articles of incorporation, and granted in its charter. However, we are not without inferential authority from the decisions in our own state. We desire first to call attention to the language of the Supreme Court in the case, of City of Cincinnati v A. T. & T. Co., et al, 112 Oh St 493. While it is true, these were foreign corporations, and the general code charges an excise tax upon foreign corporations for the privilege of carrying on its intra-state business, to be computed on the amount reported by the commission as the gross receipts of such company, the observation to which we desire to call attention applies with like force, to domestic corporations. The court said:

"It is sufficient to say that the decision in the Carrel case, supra, declaring the

right of the municipality to levy an excise tax at all, was arrived at by an interpretation of the Constitution rather than by apt words therein found, and was then and since has been a subject of some doubt."

The decision goes on to state: "That doubt having been resolved in favor of the power to the extent defined in that case (the Carrel case). * * * The majority of this court are neither disposed to unsettle the law by overruling that case, nor to extend the power of municipalities in that respect by a further interpretation removing the limitation therein expressed."

The opinion further states:

"That the levying of a tax is an exercise of sovereign power, that the sovereignty of the state extends to each of its four corners, within the municipalities as well as without, is not a subject of debate; that such sovereignty would be impaired by construing the Constitution so as to give a subdivision of the state equal sovereignty in so important a subject as that of taxation cannot be gainsaid."

The point is this, that if there remains any doubt as to the conflict between the state and the municipality, that doubt must be considered against dual taxation.

In the case of **Guardian Savings & Trust Co. v Motors Co., 116 Oh St, 95,** the court has under consideration the payment of a franchise tax by a corporation while in the hands of a receiver. The first paragraph of the syllabus in that case is as follows:

"Sec 5498, GC, prior to its amendment in 1925, imposed a franchise tax upon Ohio corporations for the privilege of exercising corporate franchises, and the tax accrues against a corporation, though its property is in the custody and control of a receiver, if the receiver is authorized to continue the usual business of the corporation in furtherance of the purposes stated in its articles of incorporation, and if such receiver in fact continues such business."

The converse of the proposition is, that if a receiver conducted the business of a corporation, while in his control, the franchise tax would be collectable. If not in fact continuing the business, the tax would not be collectable. Chief Justice Marshall in discussing the case puts the proposition of 'the collectability or non-collectability on the fact as to whether or not the receiver was in fact continuing the business

of the corporation, and the Court of Appeals having found the fact to be that the receiver was conducting the business, the Court of Appeals was affirmed in holding the tax collectable.

We take it that the second paragraph of the syllabus in the case of the **Guardian Savings & Trust Co. v Motors Co.,** supra, in effect determines the question, and is as follows:

"Where the state seeks to collect such franchise tax for the period during which the property was in the custody and control of a receiver, the question for determination is one of mixed law and fact, and the inquiry of fact relates to the manner of control by the receiver and whether or not his operations amounted to a continuation of the business."

We are therefore of the opinion that the franchise tax is an excise tax on a domestic corporation, for the right and privilege of exercising its franchise by way of transacting the business for which it is incorporated, and that the state has thereby preempted the field of occupational taxation, in so far as domestic corporations are concerned.

Propositions three and four of plaintiffs in error challenge the constitutionality of the ordinance as being discriminatory, and claim the repeal of the ordinance by implication. We do not consider that there is merit in these two propositions, and they will, therefore, be dismissed without further consideration.

We therefore find, and so hold, that the gasoline tax provided by the General Assembly is not an occupational tax, but that the corporation annual franchise tax is an excise tax, and the state has thereby entered the field of occupational taxation of domestic corporations. The State of Ohio having preempted this field, the City of Cincinnati may not again levy an occupational tax against domestic corporations. The judgments of the Court of Common Pleas of Hamilton County are reversed.

There being no dispute as to the facts and it being a question of law on the demurrer, the court will enter the judgments that the court below ought to have entered, and will give judgment for the plaintiffs in error, granting a perpetual injunction from the enforcement of the occupational tax of the City of Cincinnati against them, so long as the State of Ohio engages in that field, as herein determined.

CUSHING, PJ, and ROSS, J, concur.