People of Puerto Rico, Plaintiff and Appellee, *v.* Pedro Irizarry, Defendant and Appellant.

No. 5282.    Argued January 12, 1934.—Decided June 6, 1934.

*A. Ramírez Silva* for appellant.    *R. A. Gómez, Fiscal,* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the court.

Pedro Irizarry was sentenced on appeal by the District Court of Mayagüez to pay a fine of $1 for infringement of an ordinance with respect to municipal licenses in force in the city of Mayagüez. The appellant was charged with having "a car or automobile devoted to public service or the transportation of persons by automobile for hire within the limits of the city of Mayagüez without having procured the license showing payment of the municipal tax."

The appellant assigns a single error which he subdivides into seven grounds, and which may be considered as seven errors. In the first place, it is contended that the ordinance upon which the judgment against the defendant was based imposes double taxation in so far as it refers to public cars, not being uniform, and having been adopted and approved by the Municipal Assembly of Mayagüez without power therefor and contrary to law. The pertinent part of the ordinance attacked imposes a municipal license tax under section 3 of Act No. 26 of the Legislature of Puerto Rico, approved

on March 28, 1914, at the same rate as that fixed in said section 3 in groups A, B, and C. This tax is imposed upon and must be paid by any person, firm, association, partnership, corporation, or other form of commercial or industrial organization which carries on or should thereafter carry on within the jurisdictional limits of the city of Mayagüez, any or all of the business or industries named in section 2 of said act.

The said section 2 specifies the business or industries upon which the license tax authorized by the act may be imposed, and among them are the following:

"Group A.— . . . the transportation for hire of persons or freight by automobiles, carts, wagons, coaches or buggies, . . ."

The ordinance alleged to have been infringed covers the occupations classified within Group A, upon which, according to section 3 of the act, a tax is imposed for every $1,000 or fraction thereof, in excess of the first $500 of the gross income of the business conducted. Accordingly, the municipality is imposing a tax upon the volume of the transportation business carried on within its jurisdictional limits.

Section 1 of the act upon which the Municipal Assembly of Mayagüez based its ordinance that is alleged to have been infringed, authorizes the municipal councils of all the municipalities in the Island of Puerto Rico to assess and collect, in accordance with the provisions of that act, the license taxes there enumerated at the rates therein prescribed, or at such uniform percentage thereof as the said municipal councils may determine.

According to section 1 of the Act to regulate the use of motor vehicles in Puerto Rico and for other purposes, approved on April 13, 1916, as amended in 1921 by Act No. 55 (Session Laws, page 422), a public service automobile is defined as any motor vehicle which, for compensation or pay, shall engage in the transportation of passengers, merchandise, or materials of any kind. These vehicles may not

operate without payment of the additional fee thereafter provided for in the act for automobiles which are used as public carriers. Section 10 of that act, then in force, imposed a tax of $20 per annum on automobiles used as public carriers in a single municipality in addition to the other taxes provided for, and a tax of $30 per annum on automobiles used as public carriers in more than one municipality in addition to the other taxes provided for. In 1926 the section referred to was amended as follows:

"Automobiles acting as public carriers, in addition to other prescribed fees, per annum . . . . . . $30."

In 1928, section 10 of the Act to regulate the use of motor vehicles, approved in April 1916, was amended as follows:

"That the Commissioner of the Interior shall collect the following fees, payable in internal revenue stamps, in connection with the operation of motor vehicles. Such as are shown at an annual rate shall be paid in advance, except as otherwise provided, for the fiscal year or fraction thereof remaining at the date when due, and fractions of a month so remaining shall be counted as a whole month:

"* * * * * * *

"For licensing of automobiles, other than commercial vehicles, per horse power per annum . . . . . . $0.75

"* * * * * * *

"Automobiles acting as public carriers in one or more municipalities, except such as operate in the municipality of Vieques, in addition to all other prescribed fees, per annum . . $30.00."

Section 99 of the Internal Revenue Act of Puerto Rico, approved on August 20, 1925 (Session Laws, page 652), reads as follows:

"From and after the date of approval of this Act, no municipal district or other administrative division of Puerto Rico may levy or collect any excise or local tax on any article subject to taxation under the provisions of this Act; *Provided,* That nothing herein contained shall be understood to repeal in whole or in part Act No. 26, entitled 'An Act authorizing the municipalities of the Island of Puerto Rico to levy and collect annual taxes to be used in meet-

ing their budgetary expenses, and for other purposes,' approved March 28, 1914; *And provided, further,* That when the levying of a license tax is in conflict with the tax levied in accordance with the general Excise Tax Law and both cannot be made effective, it shall be understood that the tax levied under the Excise Tax Law shall prevail.''

Section 46 of the Act to establish a system of local government for the municipalities of Puerto Rico, approved on April 28, 1928, and amended in 1931, reads in its pertinent part as follows:

''The municipal revenue shall consist of—

'' *         *         *         *         *         *         *

'' (*d*) License taxes provided by Act No. 26 of March 28, 1914, entitled 'An Act authorizing the municipalities of the Island of Puerto Rico to levy and collect annual license taxes to be used in meeting their budgetary expenses, and for other purposes,' which is hereby declared to be in force;

'' *         *         *         *         *         *         *

'' (*f*) Any other impost, excise or tax levied by the municipal assembly in the manner provided for in section 26, paragraph 4 of this Act, provided the object or matter of the tax, excise or impost has not been the object or matter of any federal or insular impost, excise or tax;...''

As has been seen, the act of 1914 authorizes the municipalities to impose a tax upon the transportation of persons or materials, and section 10 of the Act to regulate the use of motor vehicles imposes a tax of $30 annually upon automobiles acting as public carriers on one or more municipalities.

Under the provisions of section 46 of the Act to establish a system of local government for the municipalities of Puerto Rico referred to above, municipal revenue shall consist, among other things, of the fees derived from the licenses authorized by the 1914 Act, which is continued in force. That section provides also, in its subdivision (*f*), for any other tax, excise, or impost as a source of revenue, provided that the object or matter taxed has not been the object of any federal or insular

tax, excise, or impost. So far as any other tax is concerned, section 46 expressly prohibits double taxation. The clearness of the statute eliminates any doubt as to its scope and meaning. The doubt, if there were any, would arise as to the power which a municipality might have to impose a license tax authorized by the act of 1914, upon an occupation or business which has been the subject of taxation by the Insular Government. However, examining the law in the light of the general principles established by the courts in matters of taxation, and taking into consideration the tendency of the Legislature not to authorize double taxation, one must necessarily resolve the doubt against double taxation. This act of 1914 offers an example of the tendency of our Legislature. In the case of *Successors of Fantauzzi* v. *Municipal Assembly, etc.*, 295 Fed. 803, 807, the United States Circuit Court of Appeals for the First Circuit said:

"We think that the license tax imposed in accordance with the act of 1914 was not a federal or insular tax; but, being imposed by the municipality and paid into its treasury, it was a municipal tax. We cannot escape the conclusion, however, that the Legislature intended that any excise tax which should be levied by the municipality should be one other than those upon the businesses and industries enumerated in the act of 1914, so that there should not be double taxation."

The facts in the present case differ from those upon which the Circuit Court based its conclusions. As appears from the facts alleged in that case, the Municipal Assembly of Arroyo imposed a license tax at the rates fixed in the act of 1914, and later imposed an additional tax. The court decided that the Municipal Assembly had no power to impose this latter tax. In the present case the tax imposed by the Municipal Assembly of Mayagüez upon the gross income of the business is in accordance with the rate fixed by the act of 1914. There is no additional tax in this case, imposed by the same municipality, but a license tax upon an occupation or busi-

ness already taxed by the Insular Government. The facts, however, lead to the conclusion that neither in the prior case nor in this case is the double taxation authorized.

Section 99 of the Internal Revenue Act of 1925 offers another example of the spirit which moves our Legislature and of its tendency not to authorize a double taxation. This section prohibits a municipality from imposing or collecting any local tax or impost upon any article subject to taxation under the provisions of that law; but it is provided that nothing contained in that Act shall be understood to repeal in whole or in part the 1914 law, and it is provided that when the imposition of a license tax is in conflict with a tax under the Internal Revenue Act and both cannot be made effective, the tax levied under the Internal Revenue Act shall prevail.

From these provisions the intention of the Legislature becomes clear. When reference is made to a conflict between a license tax (*patente*) and a tax, and it is assumed that there is a possible case in which both can not be made effective, it is clear that what is referred to is the validity of the municipal license tax, to its not being in conflict with the insular tax, and consequently the Legislature must have had in mind double taxation, because otherwise no conflict could arise between the two taxes which would prevent them from being made effective.

Moreover, it is necessary that the Legislature make its intention to impose double taxation appear expressly and unmistakably, in order to surmount the presumption to the contrary. All possible effort should be made to avoid interpreting a statute as imposing double taxation, unless this interpretation is necessary to effect the manifest intent of the Legislature. However, where the language of the statute is clear, the fact that double taxation results therefrom does not justify the court in disregarding the letter of the law. 61 C. J. 139.

In the case of *Commonwealth* v. *Fall Brook Coal Co.*, 156 Pa. 488, 26 Atl. 107, the court expressed itself as follows:

"The correctness of another proposition made by the appellee must be conceded, viz. that the legislature has power to impose double taxation, provided it is done in such manner as to secure the uniformity which the constitution requires. It cannot be done arbitrarily in a given case, but it may be done if the whole class to which the subject belongs is subjected to the burden in substantially the same manner. But an intent to impose double taxation will not be presumed. The presumption is against the existence of such an intention, and this presumption will prevail until it is overcome by express words showing an intent to impose double taxation."

In the case of *Tennessee* v. *Whitworth*, 117 U. S. 129, 137, the Supreme Court of the United States said:

". . . Double taxation is, however, never to be presumed. Justice requires that the burdens of government shall as far as is practicable be laid equally on all, and, if property is taxed once in one way, it would ordinarily be wrong to tax it again in another way, when the burden of both taxes falls on the same person. Sometimes tax laws have that effect; but if they do, it is because the legislature has unmistakably so enacted. All presumptions are against such an imposition."

According to the law in the State of Ohio, a municipality as long as the State does not lay an occupational tax on businesses, trades, vocations, and professions, may impose such occupational tax. The Court of Appeals of Ohio, in the case of *Cincinnati Oil Works Co.* v. *City of Cincinnati*, 177 N. E. 768, 771, copies from an opinion rendered in the case of *City of Cincinnati* v. *American Telephone Co.*, 147 N. E. 806, the following excerpt:

"That the levying of a tax is an exercise of sovereign power, that the sovereignty of the state extends to each of its four corners, within the municipalities as well as without, is not a subject of debate; that such sovereignty would be impaired by construing the Constitution so as to give a subdivision of the state equal sovereignty in so important a subject as that of taxation cannot be gainsaid."

After copying those words, the Court of Appeals says:

"The point is this: If there remains any doubt as to conflict between the state and the municipality, that doubt must be considered against dual taxation."

We are now called upon to decide whether this is a case in which the object or matter of the municipal license tax has been also taxed by the Insular Government. The municipality imposes a tax measured by the amount of business done within its jurisdictional limits; the Insular Government imposes a tax of $30 per annum on automobiles acting as public carriers. In our opinion both entities, the insular and the municipal, are taxing the same business. If transportation is stopped, the business necessarily ceases to exist. Public carriers devote themselves to the transportation of passengers or freight for hire. For the carrying on of this business the Insular Government demands a tax of $30 per annum. The business may be small or it may become of great size. It is clear that as it increases in size, the tax will also increase, since it will be necessary to increase proportionally the number of automobiles used to carry on the business. In our judgment, the tax imposed by the Insular Government upon public carriers prevents the municipality from imposing a new tax upon the business which they carry on. In the case of *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, a steamship company had established a service for the transportation of passengers and freight between the city of Gloucester, N. J., and the city of Philadelphia, Pa. The Auditor General and the Treasurer of the State of Pennsylvania presented an account against the company for taxes upon its invested capital, based on its assessed value. The tax was imposed in accordance with a law of the State of Pennsylvania. The case was finally decided by the Supreme Court of the United States. It was contended that the State had no power to impose a tax upon a foreign corporation with respect to its invested capital, if that corporation was

engaged in interstate commerce. Said Supreme Court expressed itself in the following terms:

"As to the first reason thus expressed, it may be answered that the business of landing and receiving passengers and freight at the wharf of Philadelphia is a necessary incident to, indeed is a part of, their transportation across the Delaware River from New Jersey. Without it that transportation would be impossible. Transportation implies the taking up of persons or property at some point and putting them down at another. A tax, therefore, upon such receiving and landing of passengers and freight is a tax upon their transportation; that is, upon the commerce between the two States involved in such transportation."

We are of the opinion that the judgment of the Supreme Court as to the meaning of the word transportation and the effect and incidence of a tax upon receiving passengers and freight for transportation from one point to another, is applicable to the present case.

The defendant is not charged with any crime. The Municipal Assembly of Mayagüez has no power to impose a tax upon the transportation business, to which, according to the information, the defendant devotes himself, in view of the fact that the Insular Government has imposed a tax upon the carrying on of this business.

The judgment appealed from must be reversed, and the defendant must be discharged.

Mr. Justice Wolf dissented.